CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 02 2025

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 4:12-cr-00001-1 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| RODNEY LAMAR HAIRSTON ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are two motions seeking compassionate release filed by Rodney Lamar Hairston.  The first, filed pro se, asks for a reduction in his sentence to time served, (Dkt. No. 483), although in a more recent filing, he asks for a reduction of his sentence from 400 months to 300–325 months (Dkt. No. 531, at 2).  In his original motion, Hairston seeks relief on two bases: (1) his own health conditions, particularly when coupled with the risk of contracting COVID; and (2) the health of his mother, who suffers from severe COPD.  While acknowledging that his post-sentencing rehabilitation efforts and good conduct while incarcerated cannot form an extraordinary and compelling grounds for relief, he notes that it should weigh heavily once the court determines that requirement is met.  (*See generally* Dkt. No. 483.)  The second motion, which the court deems a supplemental motion (Suppl. Mot.), was filed by and through appointed counsel.  It invokes an additional ground for relief, noting that if he were being sentenced today, the sentencing court would have the option of running his sentences concurrently, versus consecutively.  (Dkt. Nos. 494.)

The United States has filed a response to both the original and supplemental motions, urging the court to deny both.  (Dkt. No. 504.)  The United States opposes relief on a number of different grounds, and the legal landscape regarding some of its arguments has changed since the United States filed its response, as the court discusses herein.  Thereafter, Hairston filed a motion

for the "reappointment of counsel," and his previously appointed counsel, Dustin Franklin, moved to withdraw and sought the appointment of substitute counsel on Hairston's behalf. (Dkt. Nos. 519, 520.) More recently, after the court requested a copy of Hairston's sentencing transcript, Hairston filed a second memorandum in support of his original motion.[1] (Dkt. No. 531.) The court has considered all of the filings.

For the reasons discussed herein, the court will deny Hairston's motion and supplemental motion. It also will deny the motion of counsel to withdraw and deny as moot Hairston's separate motion for appointment of counsel.

## I. BACKGROUND

Hairston is currently serving a 400-month sentence for his role in a drug-related robbery which ended in a murder. Hairston played a critical role in the offense: it was his idea, he instigated it, and he sought assistance from his codefendants in conducting the robbery. Specifically, he wanted his codefendants to rob two customers who were purchasing marijuana from him—Demarcus Hairston (Demarcus) and Akoran Murphy. He discussed with at least two of the defendants the fact that Demarcus often carried a firearm, and, in Hairston's presence, those same codefendants discussed that they would have to shoot or kill Demarcus in order to rob him of the marijuana.

After the customers left Hairston's home, Hairston's codefendants were waiting about a mile away. When the customers pulled up to a stop sign, two of Hairston's codefendants fired shots into the vehicle, hitting both Demarcus Hairston and Murphy. After Murphy returned fire

---

[1] His latest filing advances several arguments. First, he claims the court erred in its guidelines calculation at sentencing, and he asserts that his guideline range should have been 292 to 365 months. Such challenges are not properly brought in a motion under § 3582. In any event, the calculation of his guideline range according to the sentencing transcript and statement of reasons (Dkt. No. 277) is the same as he is urging. *See infra* note 2. He next points out his youth at the time of the offense and suggests there is an increased recognition of youth as a factor in downward departures. He also mentions his drug addiction and his difficult upbringing. The court considers these arguments in discussing the § 3553(a) factors.

and the shooting ended, the victims' car rolled into a ditch and came to rest. Demarcus was able to exit the vehicle and was picked up by a passing motorist and taken to the hospital. Murphy was on the front passenger seat severely injured and moaning. One of the codefendants who had fired shots into the vehicle grabbed the bag of marijuana from underneath Murphy's body. Murphy later died of gunshot wounds to his head and chest.

Hairston pled guilty to counts I and III of the second superseding indictment. Count I was a charge of conspiracy to distribute marijuana and Count III charged him with possession of a firearm in furtherance of a drug trafficking crime and causing a death, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j). In exchange for Hairston's guilty plea, the government agreed to move for a third point for acceptance of responsibility, move to dismiss the remaining count, and to stipulate that a leader/organizer enhancement under U.S.S.G. § 3B21.1 not be applied, in addition to leaving the option available for him to provide substantial assistance.

Senior United States District Judge Jackson L. Kiser sentenced Hairston on April 1, 2013. The court calculated the sentencing guideline range for Count III of 292 months to 365 months, to be followed by the mandatory 60-month sentence on Count I. (Sent. Tr. 19–20, Dkt. No. 534; *see also* Statement of Reasons 1, Dkt. No. 277.)[2] Judge Kiser sentenced him to 340 months on Count III, to be followed by a consecutive 60-month sentence on Count I.

At the time Hairston was sentenced, as correctly noted by defense counsel, the "prevailing jurisprudence" was that § 924(j) incorporated § 924(c)'s penalty provisions; thus, a sentence imposed for a § 924(j) conviction was required to run consecutive to any other

---

[2] Although the court stated—at sentencing and in its statement of reasons—that it was adopting the Presentence Investigation Report (PSR) (Dkt. No. 489), the PSR on the docket calculates the guideline range for Count III as an offense level 42 (rather than 40), resulting in a guideline range of 360 months to life, with a 60-month consecutive sentence on Count I. (PSR ¶¶ 27–47.) Based on the parties' sentencing memoranda, however, it appears that there was a revised PSR which was not docketed, and the parties subsequently agreed that the guideline range for Count III was 292 to 365 months. (*See* U.S. Sent. Mem. 2, Dkt. No. 271.) The court's statement of reasons (Dkt. No. 77) also specifically lists the guideline range as being 292 to 365, and the court stated at sentencing that the final offense level was a 40 with a guideline range of 292 to 365 months. (Sent. Tr. 19–20.)

sentence. (*See* Suppl. Mot. 2, Dkt. No. 494.) Indeed, the PSR states that the term "must be imposed consecutively." (PSR ¶ 60.) Defendant argued to the contrary, but the sentencing court found persuasive the reasoning of circuits that had held that consecutive sentences were required. (Sent. Tr. 12.)

In 2023, however, the United States Supreme Court issued *Lora v. United States*, 599 U.S. 453 (2023). In resolving a circuit split on the issue, the *Lora* Court held that sentences under § 924(j) are not subject to § 924(c)'s bar on concurrent sentences. 599 U.S. at 464. Thus, if Hairston were being sentenced today, the court would have the discretion to run the two sentences partially or fully concurrent.

## II. DISCUSSION

### A. Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part,[3] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a

---

[3] Prior to the First Step Act of 2018, only the Bureau of Prisons could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

4

reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  If a court finds extraordinary and compelling reasons for release, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence.  *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  On November 1, 2023, amendments to the guidelines effectively moved a modified version of that commentary into the guideline itself.  Hairston's motion is governed by the amended guidelines, including United States Sentencing Guideline (U.S.S.G.) § 1B1.13.[4]

Hairston's motion under § 3582(c)(1)(A) thus requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

"A movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence."  *United States v. Centeno*-Morales, 90 F.4th 274, 279 (4th Cir. 2024).  *See also United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release").

**B. Exhaustion**

Based on the statements in Hairston's motion, it appears that he has properly exhausted his administrative requests.  In particular, he filed a request with the Bureau of Prisons and thirty

---

[4] If the court were to reduce Hairston's sentence, it would be required to use the version of the policy statement in effect on that date.  U.S.S.G. § 1B1.10, appl. note 9.  The court thus analyzes his motion under the amended guidelines.

days passed with no response. (Mot. 6, 13, Dkt. No. 483.) The government does not state a position on this matter, but the court notes that it does not dispute that he has exhausted. Thus, the court treats that requirement as satisfied. The court turns next to whether Hairston has shown "extraordinary and compelling" circumstances so as to render him eligible for a sentence reduction.

## C. Extraordinary and Compelling Reasons

As previously noted, Hairston's compassionate release motion requests relief on three grounds: (1) his own health conditions, coupled with the potential exposure to COVID; (2) his mother's health conditions; and (3) the Supreme Court's decision in *Lora*, which made clear that his two sentences could be imposed concurrently if he were being sentenced today.

In determining whether any of these are "extraordinary and compelling" reasons, the court must consider the amended U.S.S.G. § 1B1.13 (Nov. 2023). Hairston's assertion that his sentence should be reduced based on his own medical circumstances would likely be governed by subsection § 1B1.13(b)(1)(D), which requires an ongoing outbreak of infectious disease or a public health emergency; that defendant be at "increased risk of suffering severe medical conditions or death as a result of exposure; and that his "risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D).

For his mother's health conditions to be an extraordinary and compelling reason for a reduction, his mother must be incapacitated, and Hairston must be "the only available caregiver." U.S.S.G. § 1B1.13(b)(3)(C).

With regard to Hairston's third ground for relief, as noted, he contends that *Lora* is a purported change in the law that allows his sentences to run concurrently. In its revised policy guidance, the Sentencing Commission has noted limited circumstances under which a change in

6

the law can constitute a "extraordinary and compelling circumstance." In particular, a defendant establishes the requisite circumstances based on a change in the law only if he "received an unusually long sentence and has served at least 10 years of the term of imprisonment" and where the change "would produce a gross disparity" between his current sentence and "the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). *See also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (noting that a nonretroactive intervening change in the law, which would result in a lower sentence if a defendant were sentenced today, can constitute an extraordinary and compelling reason for compassionate release). The guidelines otherwise instruct that "[e]xcept as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." U.S.S.G. § 1B1.13(c).

      The United States makes a number of arguments in opposing relief. First, it contends that an intervening judicial decision like *Lora* is not a change in the law. Instead, *Lora* merely "interpret[ed] existing law in a manner that supports a claim of legal error." (Resp. 10.) Stated differently, it did not change the law, but simply "explain[ed] what a statute '*always* meant.'" (*Id.* at 11 (quoting *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313–14 & n.12 (1994).) The government insists that *Lora* simply means that the sentencing court erred in concluding that it was required to impose a consecutive sentence and such an error cannot be corrected through a §3582(c)(1)(A)(i) motion, but it instead must be brought through the standard process for collateral review. (*Id.* at 12 (collecting authority).) *See, e.g.*, *United States v. Rogers*, No. 16-cr-00530 (JMA), 2024 WL 866172, at *2 (E.D.N.Y. Feb. 28, 2024) (construing a claim for a resentencing in light of *Lora* as "[a]t bottom" a challenge to "the imposition of his sentence"

7

which must be brought in a § 2255 motion). *But see, e.g.*, *United States v. Battle*, No. 2:15-CR-124-PPS-JEM, 2024 WL 4589670, at *2–3 (N.D. Ind. Oct. 28, 2024) (addressing claim brought pursuant to *Lora* in context of compassionate release motion); *United States v. Temple*, No. 4:15-CR-00230-JAR-1, 2024 WL 4692018, at *2 (E.D. Mo. Nov. 5, 2024) (same); *United States v. Draper*, No. 3:12-CR-00004-MMD-CSD, 2024 WL 4007198, at *2 (D. Nev. Aug. 30, 2024) (same), appeal pending, No. 24-5588 (9th Cir.). Second, the United States argues that the sentencing commission exceeded its congressionally-delegated authority in promulgating subsection (b)(6). Third, the United States posits that even if (b)(6) were valid, Hairston does not satisfy the provision because any possible change to his sentence does not produce a "grossly disparate sentence." (Resp. at 23–24.) The *maximum* possible difference for Hairston would be that he would receive a 340-month sentence instead of 400 months, or roughly 85% of his current sentence. Unsurprisingly, cases do not agree as to whether that would be a "grossly disparate" sentence. *Compare, e.g.*, *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6-7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines" that would have applied under a subsequent case) *and United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity") *with United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").

The court recognizes that, typically, it should first determine whether any of these three circumstances constitute compelling and extraordinary circumstances. Here, however, that determination would require significant discussion and analysis, particularly in addressing the parties' *Lora*-based arguments. And the court concludes that even if any or all of the given

reasons provided extraordinary and compelling reasons under § 3582, the court would not reduce Hairston's sentence in light of the § 3553(a) factors. Thus, the court assumes arguendo that Hairston could show extraordinary and compelling circumstances as to any—or all—of the stated grounds, and it focuses its efforts instead on a consideration of the § 3553(a) factors.

### D. Section 3553(a) Factors

Among the factors the court must consider are:

- the nature and circumstances of the offense;
- the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational, vocational and other correctional treatment services;
- the kinds of sentences available and the sentencing range for his offense; and
- the need to avoid unwarranted sentence disparities.

18 U.S.C. § 3553(a).

Nearly all of these factors support keeping Hairston's sentence the same. First of all, the nature and circumstances of the offense here strongly counsel against any reduction in sentence. This offense resulted in the death of a man and the wounding of another. Although Hairston did not pull the trigger, he initiated the events that led to Murphy's murder, and the sentencing court found that there was no question that Hairston "knew that it was going to wind up in a killing before it was over with," and that fact "was discussed, if not by him, in his presence." (Sent. Tr. 73, Dkt. No. 534.)

As the sentencing court stated, in describing the circumstances of the offense:

> I can't imagine a more serious case than this was. It resulted in a premeditated murder, a lying-in-wait ambush-type murder. And that is about as serious as a murder can be. And I think in

9

> sentencing Keith Hairston that point was made.[5] But it can't be made too often. I think the defendant's participation in the scheme makes it a very serious crime on his part.

(Sent. Tr. 73–74.) Because of the seriousness of the offense, a lengthy sentence is necessary to reflect that seriousness, promote respect, provide just punishment, and to deter criminal conduct. Indeed, in discussing the need to deter, the sentencing court expressed that "[a] prosecution for first-degree murder ought to have serious consequences. And it will." (*Id.* at 74.)

Additionally, although Keith Hairston had a more extensive criminal history, he was sentenced to 600 months. To allow Hairston, who instigated the entire plot and who, as found by the sentencing court, knew before it occurred that it would result in murder, to serve *less* than two-thirds of that sentence would result in an unwarranted sentencing disparity.[6]

The court recognizes that Hairston was very young at the time of the offense and had no prior convictions at that time.[7] The court also acknowledges his somewhat difficult upbringing, in that both parents had drug problems, but he was raised by his grandparents, so it appears that he had some family support. (PSR ¶ 52.) The court further notes the PSR's statement that he was a heavy marijuana user. (PSR ¶ 55.) And unlike his co-conspirators, he was not part of a violent gang, nor was he one of the individuals who actually pulled the trigger on the two victims. But he instigated and set up the robbery, sought out gang members to carry it out, and was part of a conversation acknowledging that those involved planned to shoot at the victims'

---

[5] Keith Hairston, one of the triggermen, was sentenced to 600 months—540 months on Count Three and 60 months consecutive on Count One. The other, Tremain Alando Thomas, was sentenced to a total of 300 months—240 months on Count Three and 60 months consecutive on Count One.

[6] Hairston insisted at sentencing that he attempted to withdraw from the conspiracy by trying to contact his codefendants to call off the robbery, but he was too late. The sentencing court recognized that assertion, but it noted that even if he had tried to call the plan off, "it was certainly an ineffective and ineffectual effort on his part." (S. Tr. 73.)

[7] Hairston previously had been charged with a number of felonies, including murder, arising from an October 2011 incident in which he admitted to shooting at individuals who had entered his friend's home armed with firearms. One of the individuals was deceased upon the officers' arrival, and Hairston also accidentally shot his friend in the leg. (PSR ¶ 51.)

vehicle. Without his act of setting the events in motion, Murphy might not have been killed and Demarcus might not have been wounded.

Perhaps consistent with his youth, Hairston's conduct while incarcerated, while not egregiously bad, has involved several non-violent offenses and one that involved violence ("fighting with another person") in 2019. (Disciplinary Record as of January 2024, Dkt. No. 504-1, at 1.) So, he has not shown exemplary rehabilitation during his entire incarceration, but he apparently has had about five years without disciplinary action against him.

The court further notes that in no circumstance would the court reduce Hairston's sentence to time served at this point in his sentence (only about a third of it having been served). Indeed, even if the court were to order the 60-month sentence to run fully concurrent with his sentence on Count III, he still has not served even half of what that sentence would be. In any event, a fully concurrent sentence would fail to recognize the additional harm that came from the conduct underlying that offense. Releasing him now would result in a sentence far below what is sufficient—and necessary—to satisfy the purposes of sentencing.

In short, the court firmly believes that his current sentence is sufficient, but not greater than necessary, to accomplish the § 3553(a) sentencing goals. Accordingly, the court will deny his motion and supplemental motion.

### E.  Motions Concerning Counsel

Also pending before the court is a motion to withdraw as counsel by the attorney appointed by this court to represent him in his compassionate release proceedings, Assistant Federal Public Defender Dustin Franklin (Dkt. No. 520), which seeks the appointment of substitute counsel. Hairston has filed his own motion seeking new counsel. (Dkt. No. 519.) The court does not require any additional information or filings in this case, and the deadline for

11

Hairston to file anything had passed before counsel moved to withdraw. The court has no need for any additional filings at this time. Moreover, counsel has stated, without elaboration and without any details, that there has been a "fundamental breakdown in the attorney-client relationship." (Counsel's Mot. to Withdraw 2, Dkt. No. 520.) Neither the fact that a client has decided he would like different counsel, nor the fact that he has elected to submit *pro se* filings, shows the required breakdown in communication. *United States v. Reevey*, 364 F.3d 151, 156–57 (4th Cir. 2004) (explaining that to warrant a substitution of counsel, the breakdown must result in a "total lack of communication" and "prevent[] an adequate defense"). Accordingly, counsel's motion to withdraw will be denied, and Hairston's motion for new counsel will be denied without prejudice. If Hairston elects to appeal and wants new counsel to represent him on appeal, he may request that relief from the appellate court.

### III.  CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Hairston's motions for a reduced sentence based on the compassionate release statute (Dkt. Nos. 483, 494) are DENIED. It is further ORDERED that Mr. Franklin's motion to withdraw (Dkt. No. 520) is DENIED, and Hairston's motion to appoint counsel (Dkt. No. 519) is DENIED WITHOUT PREJUDICE. The clerk is directed to provide a copy of this order directly to Hairston, to all counsel of record, and to the United States Probation Office.

Entered: May 2, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge